## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LEE THOMPSON, | Civil No. 04-3046 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MANITEX, INC., MANITOWOC BOOM TRUCKS, INC., THE MANITOWOC COMPANY, QUANTUM HEAVY EQUIPMENT LLC, and QUANTUM VALUE PARTNERS LP, | |
| Defendants. | |

Stuart Lee Goldenberg, **GOLDENBERG & JOHNSON PLLC**, 33 South Sixth Street, Suite 3540, Minneapolis, MN, 55402, for plaintiff.

Carrie A. Daniel and Lawrence R. King, **LARSON KING, LLP**, 30 East Seventh Street, Suite 2800, Saint Paul, MN, for defendants.

Plaintiff Lee Thompson ("Thompson") was injured by a crane he was operating at a construction site and brings claims against defendant Manitex, the crane manufacturer, for negligence, strict product liability, express and implied warranty, and failure to warn.[1] Manitex moves for summary judgment on all of plaintiff's claims. Manitex also moves to strike the expert testimony of Frank Burg.

---

[1] In the moving papers and at oral argument, plaintiff voluntarily dismissed all the defendants except Manitowoc Boom Trucks, Inc., d/b/a Manitex, and also voluntarily dismissed some of his claims, leaving only claims for negligence, strict product liability, express and implied warranty, and failure to warn. Accordingly, the Court will only address those claims directed against Manitex.

## BACKGROUND

The crane at issue in this case has an 1100-pound jib that allows the crane to be extended. When in use, the jib is connected to the boom by four pins. The jib must be stowed properly when it is not in use. To stow the jib, two pins are removed, and the remaining two pins act as a hinge, allowing the jib to be folded. The jib is then secured by placing one pin behind a bracket in the middle of the jib. The other two pins are then removed and stored. Crucially, the middle pin must go behind the bracket – not through it. If the pin goes through the bracket, then the jib is not secure, and may fall. Thompson refers to this misplacement of the middle pin as "wrong-holing."

At the time of the accident, Thompson was a heavy machine operator. On May 30, 2002, he was working at a construction site with his supervisor, Jim Heidelberger. After Thompson and Heidelberger were done using the crane for the day, they attempted to stow the jib. Both Thompson and Heidelberger had worked with this type of crane before and had properly stowed the jib on other occasions. Although their accounts of the accident differ slightly, Thompson claims that Heidelberger inserted the middle pin at the correct time, and then removed the other two pins. However, the middle pin wrong-holed, such that the jib was not secure. Both Heidelberger and Thompson realized shortly thereafter that something was wrong, but by that point, the other two pins had been removed, and the jib fell, crushing Thompson's leg and causing him permanent injury. Before the accident, neither man knew that it was possible for the middle pin to wrong-hole.

On August 9, 2005, plaintiff filed the expert report of Frank Burg. This was six months after the deadline for disclosure of expert reports. Defendants move to strike the expert report of Frank Burg.

## ANALYSIS

I.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp.2d 1130, 1138 (D. Minn. 2003).

## II.   NEGLIGENCE, STRICT PRODUCT LIABILITY, EXPRESS AND IMPLIED WARRANTY

Manitex argues that Thompson's remaining claims for negligence, strict product liability, and express and implied warranty should be dismissed on summary judgment because Thompson cannot show that a design defect was the proximate cause of his injuries.

To recover on a claim of strict product liability under Minnesota law, a plaintiff must present evidence from which a jury could justifiably find that (1) the product was in a defective condition, unreasonably dangerous for its intended use, (2) the defect existed when the product left defendant's control, and (3) the defect was the proximate cause of the injury sustained. *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1060 (8th Cir. 2005) (citing *Lee v. Crookston Coca-Cola Bottling Co.*, 188 N.W.2d 426, 432 (Minn. 1971)). Claims of negligence and breach of warranty also include the causation element. *Id.* (citing *Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 792 (Minn. Ct. App. 2001) (setting forth the elements of a negligence claim)); *Alley Constr. Co. v. State*, 219 N.W.2d 922, 925 n. 1 (Minn. 1974) (setting forth the elements of a breach of warranty claim).

A design defect is a "proximate cause" of injury when the injury naturally follows in unbroken sequence from the defect without an intervening cause. *See Laubach v. Isaacson*, 1992 WL 31367, *2 (Minn. Ct. App. Feb. 25, 1992) (citing *Haugen v. Dick Thayer Motor Co.*, 92 N.W.2d 585, 589 (Minn. 1958)). Although causation is usually a factual issue inappropriate for summary judgment, in some cases a design defect is not

causally related to an injury as a matter of law. *Id.* (citing *McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471, 477 (Minn. Ct. App. 1985); *Rients v. International Harvester Co.*, 346 N.W.2d 359, 363 (Minn. Ct. App. 1984)). Accordingly, in a strict products liability case, the plaintiff must show that the "injury was not caused by any voluntary, unusual or abnormal handling by the plaintiff." *Rients v. Int'l Harvester Co.*, 346 N.W.2d 359, 363 (Minn. Ct. App. 1984) (holding that summary judgment was proper, where farmer had substantially modified tractor).

The Sixth Circuit addressed the issue of proximate cause involving a different kind of crane in *Cansler v. Grove Mfg. Co.*, 826 F.2d 1507, 1510 (6th Cir. 1987). On the defendant's motion for a directed verdict, the court held that "to satisfy his burden of proving proximate causation, [the plaintiff] was required to establish, at a minimum, that he would not have sustained his injuries had [the defendant] installed available safety devices or provided additional warnings," and that the plaintiff had failed to do this. *Id.* In particular, the court noted that the plaintiff had failed to follow the crane's instructions, and further, the plaintiff's expert testified that if the defendant's instructions and warnings had been heeded, the boom could not have fallen and the plaintiff would not have been injured. The plaintiff's expert also testified that although there were a number of changes that could be made to make the crane safer (i.e., sensors, warning buzzers, etc.), the safest and most efficient way of making sure that the crane was safe was a visual inspection, which the plaintiff failed to do.

Manitex argues that summary judgment is appropriate because Thompson, similar to the plaintiff in *Cansler*, cannot show that the design of the crane was the proximate

cause of his injuries. But this case is distinguishable from *Cansler*. First, the manufacturer's warnings in *Cansler* were more specific than the warnings attached to the crane in this case, and perhaps more importantly, Thompson's and Heidelberger's actions were arguably in compliance with the instructions and warnings. For example, the court in *Cansler* noted that the crane's handbook provided step-by-step instructions, as well as a warning after one of the steps: "WARNING DO NOT REMOVE THE PINS SECURING THE EXTENSION TO THE FRONT SUPPORT BRACKET AT THIS TIME." *Id.* at 1508. The evidence at trial showed that one of the crane personnel had, contrary to that warning, removed the pins securing the extension to the front boom at that time. *Id.* at 1509. The boom then fell, injuring the plaintiff in that case.

Here, Thompson's actions do not directly contradict the warnings and instructions for the crane at issue in this case. For example, the crane's manual in this case states: "CAUTION Do not remove pins (1) on right side of boom point until pin (2) is installed; otherwise, jib may fall off boom, causing serious injury to personnel." Thompson's claim is that he and Heidelberger did install "pin (2)" – the aforementioned "middle pin" – and then removed the remaining pins, thus acting in accordance with the instructions. The accident occurred, according to Thompson, because the middle pin appeared to be installed correctly, when in fact it was not. These actions comply with the manual instructions, unlike the actions in *Cansler*, where the crane personnel explicitly failed to follow instructions.

Second, Thompson's experts have not offered testimony similar to the experts in *Cansler*. For example, unlike the plaintiff's experts in *Cansler*, Thompson's experts have

not testified that if Manitex's warnings had been followed, Thompson would not have been injured.  In addition, Thompson's experts have not testified that a visual inspection, rather than additional safety measures, would have been the safest and most efficient way to avoid injury.

Moreover, Manitex's argument that Thompson cannot show proximate cause because Thompson caused his injuries is properly construed as an argument that Thompson's conduct, in not immediately getting away from the crane once he became aware that something was wrong, was an intervening and superseding cause of his injury. However, as the court in *Laubach* noted, whether conduct constituted an intervening cause is likely a factual question that should be resolved by a jury.  *See Laubach*, 1992 WL 31367, *2 (citing *Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352, 360 (Minn. Ct. App. 1991)).

Although this may be a close case, viewing the facts in the light most favorable to Thompson, as the Court must on a motion for summary judgment, the Court holds that genuine issues of material fact exist regarding whether Thompson can show that a design defect was the proximate cause of his injuries, or whether Thompson's conduct was an intervening and superseding cause of his injuries.  As a result, the Court denies Manitex's motion for summary judgment on Thompson's claims of negligence, strict product liability, and express and implied warranty.

### III. FAILURE TO WARN

A cause of action for failure to warn is separate from one for an allegedly defective product design. *Holowaty v. McDonald's Corp.*, 10 F. Supp. 2d 1078, 1085 (D. Minn. 1998) (citing *Huber v. Niagara Mach. & Tool Works*, 430 N.W.2d 465, 467 (Minn. 1988)). To establish a failure to warn claim, a plaintiff must show that: (1) there was a duty to warn about the risk in question; (2) the warnings given, if any, were inadequate; and (3) the lack of an adequate warning was the cause of the plaintiff's injuries. *U.S. Xpress, Inc. v. Great Northern Ins. Co.*, 2003 WL 124021, at *5 (D. Minn. Jan. 8, 2003) (citing *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn. 1987)). Although a manufacturer has a duty to warn of reasonably foreseeable dangers, there is no duty to warn if "the user knows or should know of potential danger." *Id.* (citing *Minneapolis Soc'y of Fine Arts v. Parker-Klein Assoc. Architects*, 354 N.W.2d 816, 821 (Minn.1984), *overruled on other grounds by Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990)). Whether a duty to warn exists is a question of law for the Court. *Id.* (citing *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922 (Minn. 1986)). Thus, where the alleged danger is open and obvious, Minnesota courts do not require a warning, because there is no reason to think that a warning would make the product any safer. *Id.* ("There is certainly no usual duty to warn the purchaser that a knife or an axe will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger.") (quoting W. Prosser, Handbook of the Law of Torts, § 96 at 649 (4th ed. 1971)); *Thompson v. Hirano Tecseed Co., Ltd.*, 371 F. Supp. 2d 1049, 1054 (D. Minn. 2005) (holding that the risk to machine operator's fingers by an industrial laminator machine's rollers was open and obvious).

Manitex argues that it is entitled to judgment as a matter of law on Thompson's failure to warn claim because the danger was open and obvious. Manitex also argues that Thompson cannot show that any different warnings would have changed his conduct, and that even if Manitex had a duty to warn, it provided such warnings.

The Court disagrees. First, it is not clear that the danger of "wrong-holing" is open and obvious. Thompson admitted that it would be dangerous to attempt to stow the jib if it was not secured by any pins, however, Thompson is claiming that he thought the jib had been secured with the pin, when it had not. His testimony is corroborated by Thompson's experts, who state that wrong-holing was dangerous precisely because it would be difficult to tell if the pin was not correctly placed. Although the danger of not using any pins at all may be open and obvious, it does not necessarily follow that the danger of incorrectly using a pin is also open and obvious.

Second, the warnings provided by Manitex do not address the potential of wrong-holing. Thompson is not arguing that he did not realize an unsecured jib could fall, but rather, that he did not know that the pin could appear to be correctly placed when in fact it was not (*i.e.*, wrong-holed). Further, Thompson has offered expert testimony that other measures, such as a buzzer, could have made the crane safer and have prevented the injury.

Based on these allegations, the Court holds that there are genuine issues of material fact on Thompson's failure to warn claim. There is conflicting evidence regarding whether the danger of "wrong-holing" was open and obvious, whether another safety measure, such as a buzzer, would have made the crane safer, and whether the

warnings provided by Manitex adequately addressed the danger.  Accordingly, the Court denies Manitex's motion for summary judgment on Thompson's failure to warn claim.

## IV.   MOTION TO STRIKE

Manitex also brought a motion to strike the expert testimony of Frank Burg.  A party that fails to disclose information required by Rule 26(a) shall not be permitted to use the nondisclosed information as evidence at a trial, at a hearing, or on a motion unless such failure is "harmless" or there was "substantial justification" for the failure.  *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (citing  Fed. R. Civ. P. 37(c)(1)).  Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation.  Fed. R. Civ. P. 16(b), (c)(5)-(7), (f).  The rules thus permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified.   *Trost*, 162 F.3d at 1008.   The district court's determination whether to allow an untimely expert report is reviewed for abuse of discretion.  *Id.*

Thompson disclosed the identity and report of his fourth expert witness, Frank Burg, on August 9, 2005.  Thompson's disclosure of Burg was six months after the deadline to disclose expert witnesses, and only three weeks before the hearing on Manitex's motion for summary judgment.   Manitex argues that Thompson's late disclosure of Burg is unfairly prejudicial because it did not have the opportunity to depose Burg before the hearing on the motion for summary judgment or to prepare rebuttal.

Thompson responds that his untimely disclosure of Burg was related to Manitex's tardy responses to discovery requests. Specifically, Thompson asserts that Manitex delayed scheduling the deposition of Manitex's company representative, David Morevec, until May 10, 2005. Although Thompson had asserted a failure to warn claim in the complaint, he claims that he did not realize that an additional expert would be needed until after Morevec's deposition, and that he "immediately" informed defendants' counsel that he would be disclosing an additional warning expert as soon as he received additional discovery responses from Manitex.

The Court denies the motion to strike. Thompson's failure to retain and disclose Burg as an expert would be "substantially justified" at least until May 10, 2005, when Thompson realized through the deposition of Manitex's representative that additional expert testimony would be necessary. Further, Burg does not introduce a wholly new theory of the case, but rather supplements the previously disclosed expert opinion of Jim Twyman. Finally, any potential prejudice to Manitex would be cured by permitting Manitex to depose Burg at the earliest mutually convenient time.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 13] is **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.    Defendants' Motion for Summary Judgment is **GRANTED** with respect to defendants Manitex, Inc., The Manitowoc Company, Quantum Heavy Equipment LLC, and Quantum Value Partners LP. These defendants are **DISMISSED WITH PREJUDICE**.

      b.    Defendants' Motion for Summary Judgment is **GRANTED** with respect to Count 5 (misrepresentation), Count 6 (false statement in advertising), and Count 7 (United States Consumer Product Safety Act). Counts 5, 6, and 7 are **DISMISSED WITH PREJUDICE**.

      c.    Defendants' Motion is **DENIED** in all other respects.

2.    Defendants' Motion to Strike the Expert Opinions of Frank Burg [Docket No. 43] is **DENIED**. Defendant is permitted to depose plaintiff's proposed expert, Frank Burg, within thirty (30) days of the date of this Order.

DATED:   March 22, 2006
at Minneapolis, Minnesota.

                           s/ John R. Tunheim
                           JOHN R. TUNHEIM
                           United States District Judge